Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ACUEDUCTO COMUNIDAD BUENOS AIRES, INC.<br><br>Parte Peticionaria<br><br>v.<br><br>LUIS CUADRADO APONTE<br><br>Parte Recurrida | KLAN202401117 | Apelación, acogido como *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2024CV01549<br><br>Sobre: *Injunction* (Entredicho Provisional, *Injunction* Preliminar y Permanente) |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores

Rodríguez Flores, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de febrero de 2025.

El 13 de diciembre de 2024 Acueducto Comunidad de Buenos Aires, Inc. (ACBA o Corporación) instó ante nos *Recurso de Apelación Civil*, solicitando que revoquemos una *Sentencia Parcial* emitida el 30 de octubre de 2024, en la cual el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI o foro primario), desestimó -sin perjuicio- una solicitud de un *injunction permanente* instada por ACBA. El TPI fundamentó su dictamen en el hecho de que las controversias expresadas por las partes estaban pendientes de ser adjudicadas en varios foros administrativos.[1]

Al evaluar la *Sentencia Parcial*, resulta que el TPI no dispuso de la totalidad de las controversias y tampoco impartió finalidad conforme a la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3. Por tanto, acogeremos el presente recurso como un *certiorari*.

---

[1] Apéndice, Anejo VII, págs. 53-56.

Número Identificador

SEN2025_____

# I.

En el 1989 se hincó un pozo de agua a favor del sector Buenos Aires, en el Barrio Tomás de Castro I, en Caguas, Puerto Rico.[2] A partir del 2011, el acueducto es operado bajo la administración de ACBA. Esta es una compañía sin fines de lucro creada por la comunidad para atender y administrar el acueducto.

Desde el 1989 hasta el 2017 el acueducto funcionaba solamente mediante el uso de energía eléctrica. Luego del paso del Huracán María por Puerto Rico, ACBA dispuso que operaría el acueducto utilizando solamente energía solar proveniente de un sistema de placas solares. Estas placas solares fueron ubicadas en el terreno perteneciente a la comunidad hereditaria del Señor Luis H. Cuadrado Aponte[3] (en adelante, señor Cuadrado Aponte o recurrido).

En el 2019 la ACBA comenzó a edificar una estructura de bloques y cemento en el mismo solar donde ubicaban las placas solares que energizan el acueducto. Surge de las alegaciones que el señor Cuadrado Aponte en varias ocasiones objetó dicha construcción. En noviembre de 2023, ACBA incorporó al acueducto un generador eléctrico. Ese generador eléctrico también fue localizado en el predio donde ubicaban las placas solares. De igual forma, el recurrido se opuso a dicha instalación. Ante las acciones de la ACBA y el caso omiso al recurrido, éste presentó varias querellas en diversas agencias administrativas entre los meses de enero y marzo del 2024[4].

El 3 de mayo de 2024, la ACBA presentó una demanda, contra el señor Cuadrado Aponte por un evento ocurrido el 30 de abril de

---

[2] *Íd.*, Anejo II, pág. 3.
[3] El Señor Cuadrado Aponte y su esposa son titulares del setenta por ciento (70%) del predio de terreno.
[4] 18 de enero de 2024, querella ante el Departamento de Recursos Naturales; 18 de marzo de 2024, querella ante la Oficina de Permisos del Municipio de Caguas; 21 de marzo de 2024 querella ante la United State Department of Agriculture (USDA), y solicitud de investigación ante Home Land Security.

2024.[5] El remedio principal solicitado era que se emitiera un *Injunction* Permanente contra el señor Cuadrado Aponte. Ante el reclamo de la ACBA, el 9 de julio de 2024, el señor Cuadrado Aponte presentó su contestación a la demanda y una reconvención.[6] Como parte de sus defensas y súplicas, argumentó que no procedía el *Injunction* Permanente ante la ausencia de algún daño irreparable.[7] En la reconvención éste alegó que la construcción fue realizada en propiedad ajena, que hubo mala fe y la falta de los permisos requeridos para operar el generador. Este arguyó que, desde que se vio afectado por la emisión de los gases del generador eléctrico, le informó sobre ello a la ACBA, pero esta última no actuó.[8] También reclamó daños por el uso ilegal de cámaras de seguridad y por difamación. Como parte de los remedios de su reconvención, solicitó un *Injunction* Preliminar y Permanente por el uso del generador.[9]

El 28 de julio de 2024, ACBA presentó una *Moción de Desestimación de Reconvención.*[10] En la referida moción, la ACBA adujo que el solar del señor Cuadrado Aponte colinda con el solar de la Sucesión Claudio.[11] Consecuentemente, debido a que el generador eléctrico se encuentra en la colindancia de los dos solares, la Sucesión Claudio debía ser incluida en el pleito por considerarse una parte indispensable.[12] Empero, la inclusión de la Sucesión Claudio, no afectaría la solicitud del *Injunction* Permanente, ya que la acción interdictal estaba dirigida a evitar que el señor Cuadrado

---

[5] Se alega que ese día el señor Cuadrado Aponte dejó caer sobre el generador eléctrico una madera con la intención de obstruir el escape del generador. También se alegó que el 17 de abril de 2024 había entrado al área donde ubica el generador y que el día 26 de abril de 2024 había instalado sobre el generador un cartel que decía "*Precaución Tóxico Prohibido Encender*". ACBA indica que estos eventos fueron captados por las cámaras de seguridad instaladas en el área del generador eléctrico.
[6] *Íd.*, Anejo III, págs. 8-32.
[7] *Íd.*, Anejo III, pág. 18.
[8] *Íd.*
[9] *Íd.*, Anejo III, pág. 16.
[10] *Íd.*, Anejo IV, págs. 33-44.
[11] *Íd.*, Anejo IV, pág. 34.
[12] *Íd.*

Aponte vandalizara o afectara el generador eléctrico.[13] Además, ACBA indicó que la parte recurrida debía esperar a que las agencias administrativas emitiesen una resolución en atención a las querellas instada por este.[14]

El **10 de septiembre de 2024**, el foro primario emitió *Resolución Interlocutoria de Desestimación de Reconvención*.[15] En ella se desestimó dos de las causas de acción presentadas por el señor Cuadrado Aponte en su *reconvención*.[16] La primera causa de acción desestimada fue sobre el retiro de la estructura -construcción- la cual colinda con el terreno del señor Cuadrado Aponte.[17] Asimismo, el TPI desestimó, como segunda causa de acción, la solicitud de remedios interdictales contra ACBA al catalogarlas de "prematuras". En el dictamen, el foro primario le reconoció jurisdicción primaria a los foros administrativos donde el señor Cuadrado Aponte presentó las querellas y se abstuvo de intervenir en deferencia a sus respectivas pericias.[18] Empero, el foro primario mantuvo las demás causas de acción instadas contra ACBA por el uso de cámaras de monitoreo sin el consentimiento del señor Cuadrado Aponte y el uso de su imagen en las redes sociales.[19] El 26 de septiembre de 2024, el señor Cuadrado Aponte solicitó reconsideración del dictamen.

El **30 de septiembre de 2024**, el TPI dictó una *Sentencia Parcial de Desestimación de Reconvención*.[20] El contenido de esta sentencia parcial es muy similar a la *Resolución* del 10 de septiembre de 2024. No obstante, en su conclusión el TPI atendió la moción de reconsideración presentada por el señor Cuadrado

---

[13] *Íd.*, Anejo IV, pág. 43.
[14] *Íd.*, Anejo IV, pág. 43.
[15] *Íd.*, Anejo V, págs. 45-48.
[16] *Íd.*, Anejo V, pág. 48.
[17] *Íd.*
[18] *Íd.*
[19] *Íd.*
[20] SUMAC entrada 28.

Aponte el 26 de septiembre. Allí se dispuso que el señor Cuadrado Aponte podría enmendar la reconvención para incluir a los miembros de la sucesión Claudio. En cuanto al *Injunction* Preliminar y Permanente solicitado contra ACBA, reiteró lo resuelto en la *Resolución* del 10 de septiembre de 2024, que no serían concedidos. Por tanto, desestimó sin perjuicio el reclamo interdictal, en espera de las resoluciones de las querellas antes las agencias administrativas. Por último, indicó que se mantiene la causa de acción en daños contra ACBA por el uso de las cámaras de seguridad y su imagen en las redes sociales. Resulta pertinente indicar que, esta sentencia parcial, está ausente de finalidad al no ser incorporado lo dispuesto en la Regla 42.3 de la Reglas de Procedimiento Civil.

El **11 de octubre de 2024**, el señor Cuadrado Aponte radicó una *Solicitud de Desestimación*.[21] En la misma, señaló que el TPI carecía de jurisdicción para atender el *Injunction Permanente* solicitado por ACBA por ser prematuro.[22] Cónsono con lo anterior, el señor Cuadrado Aponte fundamentó que no correspondía interponer el *Injunction Permanente*, solicitado por ACBA, al estar en espera de las determinaciones de las agencias administrativas.[23] Así las cosas, el señor Cuadrado Aponte indicó que debía desestimarse la *demanda* presentada por ACBA.[24] Es decir, el señor Cuadrado Aponte utilizó como argumento, el mismo *ratio decidendi* que utilizó el TPI para desestimarle sin perjuicio su solicitud de *Injunction* Preliminar y Permanente.

El **30 de octubre de 2024** el foro primario emitió una segunda *Sentencia Parcial* en la cual desestimó sin perjuicio la *demanda* instada por ACBA. El TPI, igualmente, concluyó que la

---

[21] *Íd.*, Anejo VI, págs. 49-52.
[22] *Íd.*, Anejo VI, pág. 50.
[23] *Íd.*, Anejo VI, pág. 51.
[24] *Íd.*, Anejo VI, pág. 51.

solicitud del *Injunction* Permanente contra el señor Cuadrado Aponte era prematura al existir querellas pendientes de resolución ante FEMA, USDA, DRNA y la OGPe.[25] En otras palabras, el TPI reiteró la deferencia a las agencias administrativas, ante sus respectivas pericias. Esta segunda sentencia parcial, de la cual se recurre ante nos, también está ausente de finalidad al no ser incorporado lo dispuesto en la Regla 42.3 de la Reglas de Procedimiento Civil.

En desacuerdo con la segunda *Sentencia Parcial*, ACBA radicó el 11 de noviembre de 2024, una *Moción en Reconsideración de Sentencia Parcial.* En ella solicitó que fuese reconsiderada la desestimación sin perjuicio del *Injunction* Permanente.[26] El **12 de noviembre de 2024** el foro primario emitió una resolución declarando No Ha Lugar a la solicitud de reconsideración.[27] En esta ocasión, el TPI añadió a su dictamen denegatorio que ACBA no había evidenciado la existencia de algún permiso que "…permita ubicar el generador objeto de la controversia" y que tampoco había evidenciado que las reclamaciones en las agencias administrativa ya habían concluido.[28]

Inconforme con el dictamen, ACBA acudió ante nos el 13 de diciembre de 2024 e imputó al TPI el siguiente señalamiento de error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LA PARTE DEMANDANTE NO TIENE DERECHO A RECLAMAR UN INJUNCTION PERMANENTE EN PROTECCION DE UN BIEN OBJETO DE QUERELLAS ADMINISTRATIVAS, HASTA QUE ESTAS EMITAN UNA DETERMINACIÓN SOBRE EL USO DEL BIEN.

## II.

### A.

El auto de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las

---

[25] *Íd.*, Anejo VII, págs. 53-56.
[26] *Íd.*, Anejo VIII, págs. 57-61.
[27] *Íd.*, Anejo I, pág. 1.
[28] *Íd.*

determinaciones de un tribunal inferior. *Medina Nazario* v. *McNeill Healthcare LLC*, 194 DPR 723, 728 (2016). Es en esencia un recurso extraordinario por el cual se solicita a un tribunal de mayor jerarquía la corrección de un error cometido por el tribunal inferior. *supra*, pág. 729. Distinto al recurso de apelación, el tribunal revisor tiene la facultad de expedir el recurso de manera discrecional, por tratarse de ordinario de asuntos interlocutorios. No obstante, nuestra discreción debe ejercerse de manera razonable, y siempre procurar lograr una solución justa. *Torres Martínez* v. *Torres Ghigliotty*, 175 DPR 83, 98 (2008).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece las instancias en las que el foro revisor posee autoridad para expedir el auto de *certiorari* sobre materia civil.[29] *Scotiabank de Puerto Rico v. ZAF Corporation, et als.,* 202 DPR 478 (2019). En el momento de este foro atender recursos de *certiorari*, descansa en la premisa de que es el foro primario quien está en mejor posición para resolver controversias interlocutorias. *Torres Martínez* v. *Torres Ghigliotty*, supra. Asimismo, el foro revisor debe tener cuidado en no interrumpir injustificadamente el curso ordinario de los pleitos que se están ventilando en ese foro. *supra*, pág. 98.

Si el asunto comprendido en el recurso de *certiorari* está en

---

[29] Esta Regla dispone que:
       [....]
       El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
       Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, entonces este foro ejerce un segundo escrutinio. Este se particulariza por la discreción que le ha sido conferida al Tribunal de Apelaciones para expedir, autorizar y adjudicar en sus méritos los casos. Para poder ejercer de manera razonable y prudente la facultad discrecional concedida, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R. 40, establece los criterios que debemos tener ante nuestra consideración al atender una solicitud de expedición de un auto de *certiorari* una vez determinemos que procede el mismo. Estos criterios son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

## III.

Como cuestión de umbral, reiteramos que el único dictamen recurrido -Sentencia Parcial del 30 de octubre de 2024- es uno interlocutorio, ante la ausencia de finalidad conforme a la Regla 42.3 de las de Procedimiento Civil, supra.

La ACBA acude ante nosotros, para que revoquemos al foro primario por incidir al denegar la procedencia de un *Injunction* Permanente. Este remedio extraordinario fue solicitado con el objetivo de evitar que el señor Cuadrado Aponte vandalice o interfiera con las propiedades administradas por la ACBA. La Honorable Jueza Elizabeth A. Rice Dilmé clasificó su dictamen desestimatorio como uno "prematuro" amparándose en la doctrina de agotamiento de remedios administrativos. Entendió el foro primario que las partes en conflicto debían esperar que los foros

administrativos con pericia resolvieran las querellas, en el ejercicio de su jurisdicción primaria. Ante tal determinación, la ACBA solicitó reconsideración, la cual fue declara no ha lugar por la Jueza Rice Dilmé. Esta denegatoria se basó en que la ACBA no había evidenciado algún permiso para la ubicación del generador y que tampoco había evidenciado la conclusión de los trámites administrativos[30].

Evaluados los dos dictámenes antes mencionado, concluimos que adolecen de especificidad y fundamentos, por lo cual se nos dificulta nuestra labor revisora. Nos explicamos.

Del expediente judicial, ni del dictamen recurrido (*Sentencia Parcial* del 30 de octubre), surge el contenido de las querellas administrativas. Se desconocen cuáles fueron las alegaciones del señor Cuadrado Aponte como promovente del trámite administrativo. No se especifican cuáles de los procesos administrativos se están llevando a cabo (procesos interdictales a nivel administrativo, procesos sumarios o procesos regulares). Tampoco se citan los estatutos o reglamentación que otorgan a dichas agencias administrativas su jurisdicción (primaria, exclusiva o concurrente). Por último, se desconoce qué remedios tienen disponibles las partes y cuáles fueron las correspondientes súplicas.

Ambas partes concurren en sus escritos que las agencias administrativas tienen la pericia suficiente para atender lo relacionado a los permisos y uso del generador eléctrico. No obstante, la ACBA exigía que la urgencia de su reclamo debía ser atendida por el foro judicial, sin tener que esperar por los trámites administrativo. En específico, solicitó que se expidiera una orden de cese y desista para evitar que el señor Cuadrado Aponte vandalizara o interfiriera con el generador eléctrico, el cual suple la

---

[30] Los procesos administrativos fueron promovidos por el señor Cuadrado Aponte, no por la ACBA.

energía al acueducto de la comunidad.  ACBA entiende que los eventos ocurridos, o que puedan ocurrir, configuran un daño real e irreparable que justifican la expedición del *Injunction* por la vía judicial.

Por otra parte, en cuanto a los daños reales e irreparables alegados por ACBA, la Sentencia Parcial del 30 de octubre de 2024, tampoco menciona o relaciona algún análisis a esos extremos.  En el dictamen no se menciona ninguna determinación de hechos probados que sustenten el conceder o rechazar el remedio interdictal. El TPI se limitó a desestimar la demanda por "prematura", pendiente a que los foros administrativos emitan sus correspondientes resoluciones.[31]

Ante este cuadro fáctico y falta de información en el dictamen recurrido, resulta imposible ejercer nuestra función revisora. Entendemos, que el foro primario incidió al no celebrar una vista antes de emitir su *Sentencia Parcial* del 30 de octubre de 2024, en la cual las partes pudieran presentar prueba y sus argumentos.  La vista hubiera ayudado a evaluar y determinar el curso a seguir entre los dos asuntos principales que las partes presentaron en el caso: Primero, el procedimiento administrativo *vis a vis* la abstención judicial y, segundo, la procedencia o rechazo del *Injunction*. Con relación al primer aspecto, como anteriormente mencionáramos, de los autos no surge el detalle de los procedimientos administrativos. Igualmente, se desconocen los remedios solicitados y disponibles para el señor Cuadrado Aponte o para la ACBA.  Por lo antes mencionado, entendemos que era necesario que el TPI auscultara si existía algún remedio interdictal a nivel administrativo, similar al reclamado por la ACBA.  En otras palabras, si existía un remedio

---

[31] Esta desestimación fue el producto de las alegaciones del señor Cuadrado Aponte en su solicitud de desestimación del 11 de octubre de 2024. Apéndice, Anejo VII, pág. 55.

que justificara la abstención judicial al amparo de la doctrina de agotamiento de remedios y que salvaguardara la urgencia alegada por la ACBA.

Si, por el contrario, no existía el remedio interdictal a nivel administrativo, entonces correspondía analizar la procedencia del *Injunction* al amparo de la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57 y/o los Artículos 675-687 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3521-3533. Este trámite, como regla general, comienza con una solicitud "preliminar" la cual podría ser consolidada con el juicio en los méritos. Una vez celebrada la correspondiente vista y presentada la prueba pertinente, el TPI estaría en mejor posición de establecer los hechos probados e indicar las razones para la expedición o denegatoria del *Injunction*. Lo anterior, supeditado a la existencia de un daño real e irreparable.

En conclusión, luego de un examen detenido del expediente, se expide el auto de *certiorari* y se revoca la desestimación de la demanda presentada por ACBA y se devuelve al foro primario.

**IV.**

Por los fundamentos que anteceden y al amparo de la Regla 40 (E) del Reglamento del Tribunal de Apelaciones, se expide el auto de *certiorari* y se revoca la *Sentencia Parcial* del 30 de octubre de 2024, que desestimó sin perjuicio la demanda presentada por la ACBA. Se devuelve el caso al foro primario y se ordena que celebre las vistas que sean necesarias y emita un dictamen fundamentado y con finalidad, a la luz de lo antes indicado.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones